UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-424-H

DAVID A. FLEENER                                                                         PLAINTIFF

V.

BULLITT COUNTY, by and through Bullitt Fiscal Court;                     DEFENDANTS
BULLITT COUNTY JUDGE/EXECUTIVE MELANIE
ROBERTS, in her individual capacity; and CARROLL SAMUELS,
in his individual capacity

**MEMORANDUM OPINION AND ORDER**

David Fleener, ("Plaintiff") filed this federal civil rights action under 42 U.S.C. § 1983 against Bullitt County ("the County"), Bullitt County Judge/Executive Melanie Roberts ("Roberts"), and Carroll Samuels ("Samuels") (collectively "Defendants") alleging that Defendants violated his First Amendment rights by firing him in retaliation for certain statements he made. Plaintiff further alleges his termination violated the Kentucky Whistleblower Act. KRS § 61.102.

Defendants have moved for summary judgment asserting that qualified immunity insulates them from suits based on a violation of Plaintiff's constitutional rights.  The Supreme Court has said that government officials have qualified immunity for liability under the First Amendment where the employee makes his comments within the scope of his official government duties.  If so, the United States Supreme Court has said that one speaks as an employee and not as a citizen for purposes of the First Amendment.

The circumstances here make for a difficult factual and legal analysis.  For the reasons that follow, the Court will deny the motion to dismiss based upon qualified immunity.

I.

Plaintiff began working as a mechanic in the Bullitt County Road Department (the "Department") in January 2002. The Department owns and operates a number of vehicles and equipment that require a Commercial Drivers License to operate. As part of each operator's daily requirements, he must visually inspect his vehicle and complete a written Vehicle Inspection Report ("VIR") as required by 49 C.F.R § 396.11. Plaintiff relied on these reports in the course of his duties as a mechanic. Plaintiff corrected problems noted on VIRs.

In December 2005, Plaintiff approached then Bullitt County Judge/Executive Kenneth Rigdon to complain about the fact that the operators were not properly completing their VIRs. Plaintiff believed that vehicles operators could lose their licenses for failing to complete the VIRs. Plaintiff also believed the failure to complete the VIRs could make operation of County vehicles unsafe. In 2006, Rigdon held a meeting to discuss the matter with Plaintiff, Defendant Samuels, and Raymond Streble, the Department supervisor at the time of the meeting. While the details of the meeting are in dispute, Streble subsequently purchased a book of forms for VIR use.

Samuels took over as supervisor of the Department in January 2007. Between January and May 2007 Plaintiff raised the issue of the VIRs to Samuels on multiple occasions. Plaintiff believed the VIRs were still being incorrectly completed. Sometime in early May, Plaintiff complained again to Samuels that the VIRs were not being completed correctly. Plaintiff wanted to meet with Roberts then County Judge/Executive. To arrange such a meeting he sought the help of another elected county official. Shortly thereafter, Samuels wrote Roberts a letter recommending Plaintiff's termination. On May 14, 2007, Roberts fired Plaintiff. The stated

2

reason for firing Plaintiff was because he exhibited discourteous and insubordinate behavior.

II.

In order to find a public official, such as Roberts and Samuels, liable for the exercise of his or her discretionary functions, the Plaintiff must show that the official "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Similarly, in order to find a government entity, such as the County, liable for a § 1983 claim Plaintiff must show that the government's policy or custom was a "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, in order for any of the Defendants to be liable Plaintiff must show that the Defendants violated one of his Constitutional rights.

Plaintiff alleges that his First Amendment rights were violated when he was fired after he spoke out against the Department's failure to properly complete VIRs. To qualify for First Amendment protection, a public employee's speech must meet two requirements. First, the employee must have spoken "as a citizen," and second, the employee must have addressed a "matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Certainly the issue of the incomplete VIRs could be considered a matter of public concern. However, it is unknown at this time precisely whether Plaintiff's raising the issue led to his termination.

Qualified immunity is a question which the Court decides as a matter of law.

A.

The Supreme Court has held "that when public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*,

547 U.S. at 421(emphasis added). The question admittedly left open by *Garcetti* is how to determine whether statements or activity was made pursuant to an official duty. In *Garcetti*, the Court did not delve deeply into this question because the parties agreed upon it. *Id.* at 424. The Supreme Court did offer some guidance:

> The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Id.* at 424-25. In sum, whether a communication is within the scope of an employee's official duties is determined by (1) the subject matter of it and (2) the circumstances in which it is made.

In many respects, Plaintiff's complaints and the manner that he communicated them are similar to those in *Garcetti*. In each case, the employee complained about the actions of others which affected his own job responsibilities. In each case, they complained internally and not publically. The *Garcetti* facts are quite narrow and clearly comprise duties that an employee might be expected to perform. The facts here are not too dissimilar. The one slight difference is that here Plaintiff was attempting to proceed outside the normal employment channels to the County Judge Executive.

B.

The Supreme Court's language suggests a receptiveness to a broader view of immunity. Since *Garcetti*, the Sixth Circuit has addressed the issue of whether speech was made pursuant to official duties on at least two occasions. Consistent with the Supreme Court's suggestion, these cases also do not define an employee's official duties too narrowly for these purposes. In

*Haynes v. City of Circleville*, 474 F.3d 357 (6th Cir. 2007), the court ruled that a police officer in charge of training police dogs spoke pursuant to his employment duties when he wrote a memo complaining about reduced training. Writing a memo complaining about reduced training was not part of his job description. However, the court ruled that in doing so he was "carrying out his professional responsibilities." *Id.* at 364. Similarly, in *Wesiberth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007), the Sixth Circuit held that a park ranger spoke pursuant to her duties when she spoke to a paid consultant hired to evaluate the Ranger Department morale.

  Here, as a mechanic, Plaintiff's job was to service vehicles and equipment that required maintenance. He used and relied upon VIRs to learn quickly the repairs necessary to ensure each vehicle's safe operation. Thus, he is commenting about the actions of others upon which he relies every day in his official duties. Plaintiff's concern for VIRs mirrors the concerns expressed in *Haynes*, for police dogs, and in *Wesiberth*, for ranger morale. Plaintiff spoke out about a subject integral to his employment duties just as the employees did in *Haynes* and *Wesiberth*. Though the Court finds that Plaintiff's statements relate to his employment duties, he appears to have expressed them in a manner outside normal employee channels.

  In the other cases, the employees communicated their concerns directly through internal channels, rather than publically. In this manner, each acted more like an employee than a citizen making a public complaint, which would be protected. Even in *Haynes*, the communication to the chief of police in a relatively small municipality can be fairly routine. Our case is somewhat different in that, while Plaintiff initially proceeded through normal channels to his supervisor, he later pressed another public official to arrange a meeting with the County Judge Executive. This is an action which is outside a mechanic's normal reporting or complaint chain of command. It

has features more like a citizen complaint than an internal one. Certainly, one would not expect a mechanic to proceed on an employee complaint to the County Judge Executive. While this may seem to be a fine distinction, it makes a critical difference here and causes the Court to deny Defendant the qualified immunity it seeks. If the evidence at trial varies from that now available, the Court can reconsider its ruling.

IV.

Plaintiff does not make a strong case for dismissal of the state whistleblower claim on its own merits. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is DENIED.

cc:     Counsel of Record